```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WAYNE ROSE,                                                 :

                        Plaintiff,                          :

            -against-                                       :    **MEMORANDUM AND ORDER**

NEW YORK CITY, DEPARTMENT OF HUMAN                          :    12 Civ. 1764 (GBD) (KNF)
RESOURCES, ANGELIA FERRELL, JOHN
DOES 1 thru 10, And THE STATE OF NEW                        :
YORK,
                                                            :
                        Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
```

*Introduction*

     Wayne Rose ("Rose") commenced this action pro se, pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1987, 1988 and 14141, as well as New York's Constitution and laws, alleging the defendants violated his constitutional rights, when they discriminated against him based on race. Before the Court is Rose's request for leave to amend the complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure, made in his opposition to the defendants' motions to dismiss the complaint. Defendants New York City, New York City Human Resources Administration[1] ("HRA") and Angela Ferrell[2] ("Ferrell") oppose the plaintiff's request for leave to amend the complaint.

---

[1] The defendants contend that, "[t]hough the Complaint names the 'New York City Department of Human Resources,' no such entity exists. Defendants therefore construe plaintiff's Complaint as making claims against the New York City Human Resources Administration."

[2] Although the complaint names Angelia Ferrell, the spelling of this defendant's name in the motion to dismiss is Angela Ferrell.

1

*Allegations in the Complaint*

Rose asserts that "NYC HRA-HASA[3] has implemented a policy to hire Afro Americans and excludes those of the Caucasian race from being employed." According to Rose, he was "advised by JOHN DOE that because he is WHITE he could 'get a job,'" and John Doe "against those guidelines, rules and regulations set forth by the defendant STATE OF NEW YORK closed plaintiff'[s] file and forced plaintiff to have no food or rent subsidiary money for a period of months because the plaintiff was 'WHITE' and 'WHITE PEOPLE HAVE NO PROBLEM GETTING A JOB.'" Rose alleges that "the supervisors have failed and refused to investigate and/or correct the actions and conduct of those defendants." He maintains that he "conducted several NY State Article 78 hearings in which the CITY defendants were ORDERED to comply with reimbursing the plaintiff moneys he privately was caused to use to pay rent and other bills as a result of city defendants negligence." He asserts that "CITY Defendants have failed and refused to comply with the Orders of the defendant STATE OF NEW YORK based [sic] that the plaintiff is WHITE" and that the agency treats white people with "a lower priority under the belief that White people can get jobs before those who are a minority." He alleges that

> the STATE OF NEW YORK, has failed and refused to properly investigate and enforce its own court orders directed to the CITY defendants and have turned a "blind eye" into [sic] the discrimination tactics of the HRA-HASA program supervisors who have implemented a policy to treat those who are black or Hispanic and who are infected with the HIV/AIDS virus on a higher priority th[a]n those who are white and infected with the HIV/AIDS virus.

Rose asserts that the defendants treated him differently from "those who are of the same color

---

[3] According to the New York City Government Web site, "HASA" stands for HIV/AIDS Services Administration. See NYC Human Resources Administration Department of Social Services, HIV/AIDS Services Administration, available at http://www.nyc.gov/html/hra/html/directory/hasa.shtml (last visited December 17, 2012).

and/or race of the employees of said agency," causing him to be "unable to get urgently needed medical attention, medical services that others who are [A]fro American receive who are on the program." Rose claims his "rights have been violated under the First, Fourth and Fourteenth Amendments of the United States Constitution." He maintains that the defendants refused to offer him services offered to others based on his race and violated his rights by disclosing his medical condition to third parties and by failing "to follow procedures set forth in state and city guidelines in the handling of disabled people infected with the HIV/AIDS virus." Moreover, the defendants were negligent in their acts and "conspired to deprive the plaintiff of his rights." Rose asserts the defendants and their supervisors "created a policy and custom under which unconstitutional practices occurred," and they "did not adequately discipline, train or otherwise direct caseworkers concerning the rights of clients in the HRA-HASA program in criteria to file and process claims and to comply with state Orders." He maintains that "the defendants have a practice and method of discriminating by a disparate method based on racial, ethic [sic] and/or economic background of the plaintiff" and they "have acted together in concert." Rose seeks monetary damages as well as an order "directing the STATE defendant to enforce its orders issued to the city defendants and to prosecute and investigate the same as appropriate."

*New Factual Allegations*

Rose contends he should be given leave to amend his complaint "to allow him to claim the additional US violations." In his Affidavit in Response to Motions to Dismiss, Rose makes new factual allegations. He asserts the defendants denied him services afforded to others, failed "to provide the plaintiff with home care services after he was hospitalized" and closed his file improperly. Rose alleges that after the caseworker remarked that "white people can get jobs and work," he "told the caseworker to 'get out of his apartment' and then filed a complaint against

him." Rose alleges that the defendants retaliated against him as follows:

> After the plaintiff made his complaint, the caseworker, in retaliation, called the police department and told them that plaintiff had AIDS and was going to kill himself. The plaintiff did leave the caseworker a message stating that he was very depressed and did not know why he was being treated unfairly and differently and was very depressed. The caseworker took that as a suicide attempt and instead of handling it properly, took that as an opportunity to GET HIM. He then called the local police department and released the plaintiff's confidential medical information to him [sic] which resulted in them [sic] kicking the plaintiff's door and having him brought out of his home with police officers wearing mask[s] and gloves as if the plaintiff was contagious in front of all his neighbors.

Furthermore, the paramedics were advised before they came to Rose's home about his medical status "as well as the nurse in the hospital whom the police women was yelling out the plaintiff's medical status out loud in the waiting room so everyone could hear." Rose asserts a First Amendment retaliation claim because a "racial remark and classification was made upon him, he thru [sic] the caseworker out of his home and the caseworker retaliated." Moreover, Rose alleges that "Title VI of the Civil Rights Act of 1964 protects" him.

According to Rose, "after this, [he] placed a sign on his front door saying 'Moving'. The caseworker then used this as a method to say that the plaintiff 'moved' and as such closed his case on him." Rose contends that "HASA has regulations on the closing of a file" which state "that their [sic] must be a reasonable and good faith search before the case is closed," but in his case the caseworker "simply CLOSED HIS FILE." Rose maintains that the defendants refused to provide him "any emergency assistance."

Rose asserts that the agency assigned a new caseworker to him, who "was under the supervision of the same supervisor who the agency never investigated," and who did not assist Rose in moving his residence. Rose contends that "[w]hen he spoke to the caseworker later after he moved, he was advised that he left the paperwork with [the previous] supervisor, and he never

processed it. Obviously sweet revenge for the plaintiff filing a complaint on them."

Rose contends that the "agency has a practice to hire Afro Americans who . . . have no adequate training to deal with people in the plaintiff's situation." Furthermore, when Rose underwent surgery in April 2010, the defendants "refused to check on him, refused to give him an application for home care," and "for about 6 weeks [he] had to live in a dirty apartment because he could not clean." Rose asserts these services are "offered to other people." Rose contends that "the defendants, who are all [A]fro-Americans caseworkers, commenced a campaign to ensure that this WHITE MAN does not get the same services as others such as proper rent payments, home care, proper moving allowances, furniture allowances, and any benefit he may be entitled."

Attached to Rose's affidavit are: (1) Exhibit A, a complaint Rose filed in the New York State Supreme Court, Kings County, Index No. 17048/2011, against the "New York City Department of Human Resources" and various individual defendants; (2) Exhibit B, The November 2, 2011 Decision/Order of the New York State Supreme Court, Kings County, Index No. 17048/11, granting the defendants' motion to dismiss Rose's complaint; (3) Exhibit C, Rose's March 5, 2012 motion for reconsideration of the November 2, 2011 Decision/Order and for leave to amend the complaint; (4) Exhibit D, the November 30, 2011 letter to Rose from the HASA Fair Hearing Unit related to Rose's fair hearing based on his request for moving expenses and furniture allowance; (5) Exhibit E, Rose's March 1, 2012 letter to a Compliance Coordinator in connection with the fair hearing decisions of June 27 and November 7, 2011; (6) Exhibit F, the New York City Human Resources Administration's November 10, 2010 letter to Rose, regarding the closing of his file; and (7) Exhibit G, "South Brooklyn Legal Services HIV Legal Advocacy Manual HIV-Related Benefits (HASA)" and various e-mail messages.

*Defendants' Contentions*

The defendants contend the plaintiff's new claims would be futile. They assert that none of the new factual allegations and nothing in the exhibits attached to Rose's affidavit indicate that Ferrell was personally involved in any of the alleged acts. Moreover, none of the new factual allegations supports the existence of an unconstitutional municipal policy or custom. According to the defendants, some of the new assertions and the content of many of the exhibits "serve to actively undermine and directly contradict his underlying claims," showing that amending the complaint would be futile. For example, Rose's allegation that he was denied services to which he was entitled is contradicted by the state court's decision, in which the court determined that Rose failed to show either that he was entitled to benefits or that he applied for them. Moreover, Rose's claim that the defendants did nothing after he complained about the caseworker's remarks is contradicted "by his later claim that after making this complaint he was assigned a new caseworker" as well as "the November 10, 2010 letter to plaintiff from HRA attached to his Affidavit as Exhibit F, which states that it was written in response to plaintiff's complaint that his caseworker stopped his rent and discriminated against him, and indicates that plaintiff was thereafter assigned a new caseworker." The defendants maintain that Exhibit F also demonstrates that the caseworker ended Rose's housing subsidy because Rose "left a note on [his] apartment indicating [he] abandoned [his] apartment and returned the keys to the landlord."

*Legal Standard*

Once the time for amending the pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). Leave to amend should be denied if the proposed new claim cannot survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Kassner v. 2d Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Cox III v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). "Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." Zeno v. Pine Plains Cent. Sch. Dist., ___ F.3d ___ (2d Cir. 2012), 2012 WL 5992147, at *6. To establish a claim under Title VI, a plaintiff must show: "(1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." Id. at *7.

*Application of Legal Standard*

Rose's new factual allegations can be summarized as follows: (a) the caseworker

7

retaliated against Rose for filing a complaint against him based on a racial remark uttered, allegedly, when the caseworker called the police department and reported that Rose had AIDS and was going to kill himself; (b) the caseworker closed his file without following his agency's regulation that "a reasonable and good faith search" be conducted; (c) a newly assigned caseworker retaliated against him when he failed to process the paperwork in connection with Rose's move from his residence; and (d) during April 2010, subsequent to his surgery, the defendants refused him services "offered to other people" because he is white.

With respect to Rose's claim that his medical information was released by a caseworker in retaliation for his filing a complaint against that caseworker, even assuming that Rose alleged sufficiently that his filing of the complaint was protected speech and that the caseworker's telling the police he had AIDS is an adverse action, Rose did not make plausible factual allegations showing that a causal connection existed between his protected speech and the adverse action. On the contrary, in his affidavit Rose stated that he left a message for the caseworker stating "that he was very depressed," and the caseworker "took that as a suicide attempt" and acted on it by calling "the local police department." Although Rose contends that the caseworker "took that as an opportunity to GET HIM," that conclusory statement contradicts Rose's allegation that the caseworker acted upon his message, and Rose asserts no plausible factual allegations that support an inference of causal connection between his filing the complaint and the caseworker's action. Consequently, any First Amendment retaliation claim based on these factual allegations is meritless.

Similarly, Rose's evidence in support of the new factual allegations contradicts his claim that the caseworker closed his file, in violation of the agency's regulation, based on Rose's race. Exhibit G, "South Brooklyn Legal Services HIV Legal Advocacy Manual HIV-Related Benefits

(HASA)," to which Rose points, sets forth in its Case Closure Protocol section that HASA can close a case under the following circumstances:

    a.      the recipient cannot be located for recertification after a "reasonable, good faith" search for at least 90 days, including written notice sent certified mail, return receipt requested to the last known address; or
    b.      the recipient is no longer eligible for services; or
    c.      the recipient is deceased.

Exhibit F, the November 10, 2010 letter from the New York City Human Resources Administration to Rose, states

> On November 5th you and I discussed your case in detail via telephone. At that time you informed me that you left a note on your apartment door indicating you abandoned your apartment and returned the keys to the landlord. In our conversation however you indicated that you never actually left the apt. During our conversation I explained to you that with your notification, the worker is charged with the responsibility of stopping the rent. I also informed you that once the rent was removed, because you have income, your entire Public Assistance case has officially closed. I also informed you that our records show that rent was issued to your landlord on your behalf thru the beginning of October (10A cycle). We discussed restoring your budget at which time you faxed a copy of your lease indicating that it is still in effect.

Rose's Exhibit G demonstrates that, contrary to Rose's assertion that an agency regulation required it to conduct "a reasonable and good faith search" before it can close his file, the failure of which he asserts violated his constitutional right, the agency can close the case under two other circumstances, including when the recipient of agency services is no longer eligible for services. Rose's Exhibit F explains that his file was closed based on his ineligibility for services, arising out of his notice that he abandoned his apartment. In his affidavit, Rose asserts that he posted the sign "Moving," and "the caseworker then used this as a method to say that the plaintiff 'moved' and as such closed his case on him." Thus, Rose's allegation that the caseworker closed his file

9

because he misinterpreted his notice "Moving" to mean that Rose "moved" contradicts his allegation that his file was closed based on the caseworker's remark that "white people can get jobs and work," and he fails to make any plausible factual allegations of a causal connection between the closing of his file and his filing the complaint regarding the caseworker's remark. Accordingly, any claim of retaliation or intentional discrimination based on these factual allegations is meritless.

Rose's claim that the new caseworker retaliated against him when he failed to process the paperwork in connection with Rose's move is also contradicted by Rose's evidence, namely, Exhibit B, the state court decision addressing Rose's claim for moving expenses. The state court concluded: "With regard to the moving expenses, Plaintiff neither showed that he was entitled to such benefits nor that he applied for them and was subsequently denied by City Defendant." Similarly, in his new factual allegations, Rose fails to make any assertion that: (i) he was entitled to the moving expense; (ii) he applied for them; and (iii) his application was denied by the defendants. Thus, Rose's new factual allegations respecting his move are insufficient to state a claim of racial discrimination or retaliation.

Similarly, Rose's claim that during April 2010, subsequent to his surgery, the defendants refused him services "offered to other people" because he is white, is not substantiated by any plausible factual allegations. Rose does not assert that: (1) he was eligible for services; (2) the alleged services were denied him deliberately by the defendants because he is white; or (3) the defendants had actual knowledge of the alleged discriminatory acts. Rose's conclusory allegations that "these services are 'offered to other people,'" and that the defendants "commenced a campaign to ensure that this WHITE MAN does not get the same services as others," are insufficient to state a claim of unconstitutional racial discrimination.

*Conclusion*

For the foregoing reasons, the plaintiff's request for leave to file an amended complaint, contained in his opposition to the defendants' motions to dismiss, is denied as futile.

Dated: New York, New York                    SO ORDERED:
       January 4, 2013

Copy mailed to:                              _____
                                             KEVIN NATHANIEL FOX
Wayne Rose                                   UNITED STATES MAGISTRATE JUDGE

*Conclusion*

For the foregoing reasons, the plaintiff's request for leave to file an amended complaint, contained in his opposition to the defendants' motions to dismiss, is denied as futile.

Dated: New York, New York
      January 4, 2013

SO ORDERED:

Copy mailed to:

Wayne Rose

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE